# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

KASEY TOWNSEND                                        CIVIL ACTION

VERSUS                                               18-554-SDD-EWD

TOWN OF BRUSLY, ET AL.

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] by Defendant, Town of Brusly ("Defendant").[2] Plaintiff, Kasey Townsend ("Plaintiff") has filed an *Opposition*[3] to this motion. For the following reasons, the Court finds that Defendant's motion should be denied.

## I.      FACTUAL BACKGROUND

Plaintiff became employed as a patrolman with the Brusly Police Department on November 13 2013.[4] On March 25, 2015, Plaintiff informed Chief Jonathan Lefeaux ("Chief Lefeaux") and Assistant Chief Tom Southon ("Southon") of her pregnancy.[5] Plaintiff advised her superiors that, during her last pregnancy while employed by the Plaquemine Police Department, she was able to obtain a light duty position until her delivery.[6] In response to this notification, Chief Lefeaux requested Plaintiff provide conformation from her physician of both her pregnancy and what patrolman duties she

---

[1] Rec. Doc. No. 15.
[2] The Parties agree that the Town of Brusly and the Town of Brusly Police Department are a single entity.
[3] Rec. Doc. No. 2096.
[4] Rec. Doc. 20, p. 1.
[5] Rec. Doc 15-2, ¶ 4.
[6] *Id.* at ¶ 5.
Document Number: 57687

would be capable of performing during her pregnancy.[7]  Although Plaintiff had not seen her physician yet, Plaintiff informed Chief Lefeaux that, during her last pregnancy, she was restricted from carrying a firearm, but she also stated that she felt capable of performing her duties in the meantime.[8]  On March 30, 2015, Defendant received a letter from Plaintiff's doctor requesting that Plaintiff obtain a light duty position during her pregnancy.[9]  On March 31, Southon advised Plaintiff to take the next two days off with pay.[10]

Plaintiff received a letter from Chief Lefeaux advising that she was scheduled to work the night shift on April 6, 2015.[11]  This letter also informed Plaintiff that if she had not been able to contact a doctor or had not been removed from light duty status by April 6, she would need to complete a request for leave.[12]  Thus, on April 6, Plaintiff requested copies of the following documents from Chief Lefeaux:  the letter received via fax from Plaintiff's obstetrician, Dr. Ryan Dickerson, at Woman's Hospital; a list of dates Plaintiff had taken off since the beginning of her employment with Defendant; the date Plaintiff began part-time work; the amount of time off available to Plaintiff, including sick leave and comp time; the date of council meetings in reference to employment/leave of Plaintiff; and the names of council members involved in the decision-making relating to Plaintiff's employment.[13]

---

[7] *Id.* at ¶ 6.
[8] *Id.* at ¶ 7.
[9] *Id.* at ¶ 9.
[10] *Id.* at ¶ 10.
[11] *Id.* at ¶ 11.
[12] *Id.*
[13] *Id.* at ¶ 12.
Document Number: 57687

On April 14, a letter was sent from the Town Clerk to Plaintiff indicating her available leave time and information regarding council meetings wherein her employment was addressed.[14] On April 16, Plaintiff received a letter from Chief Lefeaux indicating that, because she refused to execute a release for Defendant to speak to her doctor, Defendant could not consider possible accommodations for her pregnancy.[15]

Plaintiff's counsel responded to Chief Lefeaux on April 21 in a letter indicating that Plaintiff was not refusing to provide information from her doctor for reasonable accommodations but advising that Plaintiff's first appointment with the doctor was not until April 28, 2015.[16] Chief Lefeaux responded to Plaintiff by letter which notified Plaintiff that, as of April 24, Plaintiff's sick and regular leave time would be exhausted, and unpaid administrative leave would begin April 25.[17] This letter also stated that there were no light duty positions available in the department at that time.[18]

On approximately May 5, 2015, a meeting was held at the Smith Law Firm wherein Plaintiff, Southon, former Brusly Mayor Joey Normand ("Mayor Normand"), and Plaintiff's former counsel Adrienne Rachel ("Rachel") were present. Rachel made various accommodation requests and/or reassignment/light-duty requests that would accommodate Plaintiff's pregnancy, but all requests were rebuffed by Defendant's representatives.[19] Rachel attested that Defendant's representatives refused to discuss her inquiry regarding any available positions in Brusly city government.[20] Defendant's

---

[14] *Id.* at ¶ 13.
[15] *Id.* at ¶ 14.
[16] *Id.* at ¶ 15.
[17] *Id.* at ¶ 16.
[18] *Id.*
[19] Rec. Doc. No. 16-11 (Declaration of Adrienne Rachel).
[20] *Id.* (Declaration of Adrienne Rachel, ¶ 12).
Document Number: 57687

representatives also appeared uninterested in having any discussions with Plaintiff's obstetrician to arrive at a reasonable accommodation for Plaintiff.[21] In fact, Rachel attested that, during this meeting, Mayor Normand stated that if Plaintiff wanted to keep her job, she should not stay pregnant, at which point Rachel ended the meeting.[22]

Plaintiff's POST certification[23] lapsed in May of 2015.[24] Officer Anthony Dupre was hired on November 11, 2015 to work full-time in Plaintiff's position.[25] At some point in early January, Plaintiff's counsel contacted Defendant and advised that she was able to return to full-duty.[26] A meeting was held on January 11, 2016 to discuss Plaintiff's future with Defendant. Chief Lefeaux testified that Defendant's attorney advised Plaintiff that if she dropped her EEOC complaint and lawsuit, Defendant would consider reinstating her to her previous position; when Plaintiff declined to do so, she was terminated in that very meeting.[27] Thus, on January 11, 2016, Plaintiff was formally terminated because, according to Defendant, she was no longer qualified for her patrolman position, and her POST certification had lapsed.[28]

Plaintiff filed this lawsuit against Defendant on May 16, 2018 after receiving her Right to Sue Letter from the Equal Employment Opportunity Commission ("EEOC"). Plaintiff asserts claims of sex discrimination in violations of Title VII of the Civil Rights Act of 1964,[29] pregnancy discrimination in violation of Pregnancy Discrimination Act ("PDA")

---

[21] *Id.* (Declaration of Adrienne Rachel, ¶ 15).
[22] Rec. Doc. No. 16-4, p. 12 (Deposition of Plaintiff, p. 48, lines 8-11).
[23] Peace Officer Standards and Training (POST) certification is mandated by Louisiana law and ensures that peace officers have received the proper training in the exercise of their duties. *See* La. R.S. 40:2402.
[24] Rec. Doc 15-2, ¶ 17.
[25] *Id.* at ¶ 18.
[26] Rec. Doc. No. 16-2, p. 33 (Deposition of Chief Jonathan Lefeaux, p. 132, lines 13-19).
[27] *Id.* at pp. 33-34 (Deposition of Chief Jonathan Lefeaux, p. 132, lines 22-25; p. 133, 1-19).
[28] Rec. Doc 15-2, ¶ 19.
[29] 42 U.S.C. § 2000e.
Document Number: 57687

of 1978,[30] as amended by Title VII of the Civil Rights Act of 1964,[31] and failure to accommodate under the Americans with Disabilities Act ("ADA").[32]   Defendant now moves for summary judgment on all Plaintiff's claims.

## II.   LAW & ANALYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[33]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[34]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[35]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[36]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[37]

---

[30] 42 U.S.C. § 2000e(k).
[31] 42 U.S.C. § 2000e–2(a).
[32] 42 U.S.C. § 12101, *et seq.*
[33] Fed. R. Civ. P. 56(a).
[34] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[35] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[36] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[37] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
Document Number: 57687

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[38] All reasonable factual inferences are drawn in favor of the nonmoving party.[39] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[40] "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[41]

## B. Discrimination under the PDA

Title VII of the Civil Rights Act of 1964 forbids a covered employer "to discriminate against any individual with respect to ... terms, conditions, or privileges of employment, because of such individual's ... sex."[42] Enacted in 1978, the Pregnancy Discrimination Act ("PDA") added two clauses to Title VII. The first specifies that "[t]he terms 'because of sex' or 'on the basis of sex' [in Title VII] include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions."[43] The second provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or

---

[38] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[39] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[40] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[41] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[42] 42 U.S.C. § 2000e-2(a)(1).
[43] 42 U.S.C. § 2000e(k)(2).

inability to work."[44]   A plaintiff may prove disparate treatment claims "either (1) by direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic, or (2) by using the burden-shifting framework set forth in *McDonnell Douglas*."[45]

The Supreme Court recently clarified the standard for disparate-treatment claims under the PDA in *Young v. United Parcel Service, Inc.*,[46] wherein the plaintiff claimed that the United Parcel Service ("UPS") violated Title VII and the PDA "in refusing to accommodate her pregnancy-related lifting restriction."[47]  The evidence in *Young* showed that "UPS had a light-duty-for-injury policy with respect to numerous other persons, but not with respect to pregnant workers," and that it "accommodated several individuals when they suffered disabilities that created work restrictions similar to [the plaintiff's]," but not all injured workers.[48]  The plaintiff and UPS drew dramatically different conclusions from this evidence. The plaintiff read the second clause of the PDA literally, believing that she only needed to show that UPS accommodated "one or two workers" who were similarly situated in their ability or inability to work, regardless of their specific circumstances.[49]  In contrast, UPS argued that the second clause merely clarified the first clause defining sex discrimination to include pregnancy discrimination and that a PDA plaintiff asserting discrimination in accommodations would need to show that her

---

[44] *Id.*
[45] *Young v. United Parcel Service, Inc.*, —— U.S. ——, 135 S.Ct. 1338, 1345, 191 L.Ed.2d 279 (2015).
[46] *Id.*
[47] *Id.* at 1344.
[48] *Id.* at 1347.
[49] *Id.* at 1349.

Document Number: 57687

employer had discriminated against pregnant women "within a facially neutral category (such as those with off-the-job injuries)."[50]

The Supreme Court declined to adopt either position and concluded, rather, that the plaintiff's interpretation "prove[d] too much," essentially adopting a "most-favored-nation" standard for pregnancy accommodations.[51] Thus, under the plaintiff's reading of the statute, if an employer chose to accommodate a small group of employees engaged in "particularly hazardous jobs, or those whose workplace presence is particularly needed, or those who have worked for the company for many years," it would also need to accommodate pregnant employees with the same "ability or inability to work."[52] However, the Court also concluded that UPS's interpretation of the statute was untenable in that it treated the second clause of the PDA as surplusage and failed to give effect to Congress' intent to "overturn *Gilbert* in full."[53] As the Court explained, "'the first clause of the [PDA] reflects Congress's disapproval of the reasoning in *Gilbert*,'" while "the second clause ... 'was intended to overrule the holding in *Gilbert* and to illustrate how discrimination against pregnancy is to be remedied.'"[54]

The Court adopted a middle ground approach, holding that in a case alleging a discriminatory failure to accommodate under the PDA, the initial steps of the *McDonnell Douglas* framework apply as usual. However, the *Young* Court admonished courts that making a *prima facie* case should not be "as burdensome as succeeding on an ultimate

---

[50] *Id.*
[51] *Id.*
[52] *Id.* at 1349–50.
[53] *Id.* at 1353.
[54] *Id.* at 1353 (quoting *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 284–85, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987)).
Document Number: 57687

finding of fact as to a discriminatory employment action," and clarified that a plaintiff alleging "that the denial of an accommodation constituted disparate treatment" under this second clause "may make out a prima facie case by showing ... [1] that she belongs to the protected class, [2] that she sought accommodation, [3] that the employer did not accommodate her, and [4] that the employer did accommodate others similar in their ability or inability to work."[55] Additionally, the Court expressly "noted that the approach described in the decision is limited to the Pregnancy Discrimination Act."[56]

If a plaintiff lacks direct evidence and presents a *prima facie* case of pregnancy discrimination, then the burden shifts to the employer to come forward with a "'legitimate, nondiscriminatory' reason[ ] for denying her accommodation."[57] Under the PDA, that justification, however, "cannot consist simply of a claim that it is more expensive or less convenient to add pregnant woman to the category of those ... whom the employer accommodates."[58] If the employer proffers a legitimate, non-discriminatory reason for the plaintiff's termination, the burden then shifts back to the plaintiff to show that the employer's asserted justification was, in fact, pretextual.[59]

### 1. Direct Evidence

In support of its motion, Defendant does not provide evidence or argument regarding direct evidence but focuses solely on challenging whether Plaintiff has

---

[55] *Id.* at 1354 (internal quotation marks omitted); *see also, e.g., EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)("In the Rule 56 context, a prima facie case of discrimination plus a showing that the proffered reason is pretextual is typically enough to survive summary judgment.").

[56] *Verrett v. Johnson*, No. 14–1854–SS, 2015 U.S. Dist. LEXIS 116111, at *28, 2015 WL 5125202, at *11 (E.D.La. Sept. 1, 2015) (construing *Young*, 135 S.Ct. at 1355).

[57] *Young*, at 1354 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

[58] *Id.*

[59] *Id.*

established a *prima facie* case of discrimination. Plaintiff maintains that she has presented direct evidence of discrimination based on her pregnancy.

Where a plaintiff "presents direct evidence of discrimination, 'the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor.'"[60] Fifth Circuit precedent further instructs that, in determining whether a workplace comment constitutes "direct evidence" of discrimination, rather than a "stray remark," a court must consider whether the comment: (1) relates to the plaintiff's protected characteristic; (2) was made proximate in time to the challenged employment decision; (3) was made by an individual with authority over the challenged employment decision; and (4) relates to the challenged decision.[61] "Generally, '[d]irect evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption.'"[62]

As set forth above, Plaintiff submitted evidence that she, Southon, Mayor Normand, and Plaintiff's then-counsel Rachel had a meeting at the Smith Law Firm during which Normand advised Plaintiff that if she wanted to keep her job, she should not stay pregnant.[63] At this meeting, Plaintiff contends Rachel inquired about the possibility of Plaintiff handling bookings at the jail, and Defendant's representatives advised that "no female officers can perform those duties."[64] Chief Lefeaux testified in his deposition that

---

[60] *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 (5th Cir. 2015) (quoting *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)).
[61] *Id.* (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001)).
[62] *Martin v. Winn-Dixie Louisiana, Inc.*, 132 F.Supp.3d 794, 817 (M.D. La. 2015)(quoting *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005)).
[63] Rec. Doc. No. 16-4, p. 12 (Deposition of Plaintiff, p. 48, lines 8-10).
[64] Rec. Doc. No. 16-11, p. 2 (Declaration of Adrienne Rachel, ¶ 13).
Document Number: 57687

there was never any consideration given to allowing Plaintiff to work part-time because "[s]he would need to be able to carry a firearm for anything that we would have part-time."[65]

Defendant filed no response to Plaintiff's *Opposition* and has provided no summary judgment evidence that disputes or contradicts the above alleged statements.

In *Martin v. Winn-Dixie, Inc.*, a pregnancy discrimination case decided here in the Middle District of Louisiana, the Court found that the plaintiff had presented "some direct evidence of discrimination" by submitting the statement by her employer that she "couldn't do [her][] job as Co-Director and be pregnant."[66]  The Court held that:

> Taking all inferences in Plaintiff's favor, such a remark satisfies the Fifth Circuit's standard for ascertaining such blunt statement's probative value, as Sutton's remark "related to the protected class of persons of which the [P]laintiff ... [was] a member" (i.e. pregnant women), was "proximate in time to the employment decision at issue" and related "to the employment decision at issue" (i.e. Plaintiff's attempted accommodation and Defendant's offer of either demotion or leave), and were made by someone with some ill-defined "authority over the employment decision at issue." *Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir.1999) … In fact, following Rule 56's mandate to make any reasonable inferences in the nonmovant's favor, other courts have treated statements like Sutton's as direct evidence of pregnancy discrimination. *See, e.g., E.E.O.C. v. CTI Global Solutions, Inc.*, 815 F.Supp.2d 897 (D.Md.2011) (denying summary judgment in part, finding direct evidence that Plaintiff's supervisor told her that she would be removed from her job because she was pregnant and out of fairness to other employees).[67]

In *Thomas v. Florida Parishes Juvenile Justice Commission*, the district court for the Eastern District of Louisiana addressed a pregnancy discrimination case brought by a plaintiff employed as a juvenile detention staff ("JDS") officer for the Florida Parishes

---

[65] Rec. Doc. No. 16-2, p. 21 (Deposition of Chief Jonathan Lefeaux, p. 82, lines 4-10).
[66] *Martin*, 132 F.Supp.3d at 818.
[67] *Id.*
Document Number: 57687

Juvenile Justice District.[68]   Based on the potentially violent nature of dealing with detainees, the defendant required its JDS officers to receive training in defensive tactics and continually demonstrate a defined level of physical fitness.  Further, the defendant's policy  and procedure manual required that JDS officers complete and pass bi-annual physical fitness testing consisting of five separate components: "(1) Sit and Reach; (2) Bench Press; (3) Push-ups; (4) Sit-ups; and (5) a 1.5 mile run, with gender-specific proficiency requirements set forth for each component."[69]

The plaintiff was employed by the defendant for nearly a decade before she became pregnant.  The plaintiff gave the defendant notice of her pregnancy and asked to move up her scheduled fitness test, which the defendant did.  The plaintiff passed the first four components, but she was not allowed to complete the 1.5 mile run at that time, and it remained scheduled approximately three weeks after the other components.[70]  Plaintiff failed to complete the 1.5 mile run, and she was scheduled to retake this part of the test a few weeks later. However, the plaintiff developed complications following the initial run, and she provided her employer with a doctor's note limiting the plaintiff's physical activities and advising that the plaintiff should avoid running and heavy lifting due to a high risk pregnancy.[71]

Despite her doctor's note, the defendant advised the plaintiff that it "had a custom of not excusing pregnant women from the 1.5 mile run, even with a doctor's note" although it would excuse non-pregnant employees with physical limitations accompanied by a

---

[68] 2019 WL 118011 (E.D. La. Jan. 7, 2019).
[69] *Id.* at *1.
[70] *Id.* at *2.
[71] *Id.*
Document Number: 57687

doctor's note.[72]  Thus, the plaintiff again attempted the run, failed, and experienced further

complications thereafter which resulted in a trip to the emergency room.[73]

The plaintiff sued the defendant under the PDA and argued that the defendant

refused to accommodate her pregnancy-related running restriction while accommodating

running restrictions of non-pregnant workers, which violates the second clause of the

PDA.[74]  The plaintiff maintained that she had presented direct evidence of discrimination

based on the defendant's representation to her that it was their custom not to excuse

pregnant employees from the run portion of the fitness test.  The court agreed that this

lone statement constituted direct evidence of discrimination:

> Thomas contends that Ashton Magee's statement to her when she
> presented him with Dr. Williams's May 19, 2016 note advising of her
> pregnancy-related running restriction is direct evidence of pregnancy
> discrimination. According to Magee's affidavit, he informed Thomas that
> "she would have to do the run and that she should not turn in the doctor's
> note" because the "Center did not allow pregnant employees from being
> excused [sic] from the Physical Fitness Test – 1.5 mile run even with a
> doctor's note" but "would let other non-pregnant employees with physical
> limitations be excused from the 1.5 mile run." Drawing all reasonable
> inferences in the light most favorable to the non-movant, the Court finds that
> Magee's remark constitutes "direct evidence" under the Fifth Circuit's
> applicable standard because it (1) directly relates to Thomas's protected
> characteristic – her pregnancy; (2) was made simultaneously with the
> challenged employment decision – the failure to accommodate her request
> to delay the run; (3) was "made by someone with some ill-defined 'authority
> over the employment decision at issue'" because Magee was her supervisor
> at the time she requested the accommodation; and (4) directly relates to the
> challenged decision – the failure to accommodate her pregnancy-related
> running restriction. *See Martin v. Winn-Dixie Louisiana, Inc.*, 132 F.Supp.3d
> 794, 818 (M.D. La. 2015) (quoting *Krystek v. Univ. of S. Miss.*, 164 F.3d
> 251, 256 (5th Cir. 1999)).[75]

---

[72] *Id.*
[73] *Id.* at *3.
[74] *Id.* at *5.
[75] *Id.* at *6.
Document Number: 57687

Considering the reasoning and analysis from the *Martin* and *Thomas* courts discussed above, the Court finds that the statements submitted in this matter, which Defendant has not disputed or controverted, constitute direct evidence of pregnancy discrimination. The Court finds particularly troubling the alleged statement made to Plaintiff by former Mayor Normand that, if she wanted to keep her job, she should not stay pregnant. This statement alone is sufficient to constitute direct evidence of discrimination. The statement that no female officers would be allowed to perform jail bookings and the admission by Chief Lefeaux that Defendant's representatives never even considered placing Plaintiff on light duty based on the limitations due to her pregnancy also constitute direct evidence of discrimination. These statements relate to the Plaintiff's pregnancy/gender, were made proximate in time to the challenged employment decision, were made by individuals with authority over this decision, and relate to the challenged decision. Thus, the Court finds that Plaintiff has presented direct evidence of discrimination and need not present a *prima facie* case.

## 2. Indirect Evidence of Discrimination

Alternatively, even if the statements above did not constitute direct evidence of discrimination, the Court finds that Defendant has failed to carry its burden of establishing that Plaintiff has failed to present a *prima facie* case of pregnancy discrimination because Defendant has failed to argue the appropriate legal standard. Curiously, although Defendant cites to the Supreme Court's decision in *Young*, it argues only the previous *prima facie* elements of a pregnancy discrimination claim that were specifically replaced

by the Court in *Young*.[76]  Indeed, Defendant devotes a great deal of time to demonstrating that Plaintiff was no longer "qualified for the position" based on her inability to carry a firearm due to her pregnancy.[77]  However, this is not an element of a pregnancy discrimination claim post-*Young*.  By failing to argue or direct the Court to summary judgment evidence regarding the applicable standard for a *prima facie* case of pregnancy discrimination, Defendant's motion fails as a matter of law as to the PDA claim.

Additionally, the Court notes that Plaintiff has, in fact, presented sufficient summary judgment evidence to state a *prima facie* case of pregnancy discrimination.  As set forth above, the current applicable elements required to establish a *prima facie* case of pregnancy discrimination are as follows:  (1) Plaintiff belongs to the protected class; (2) Plaintiff sought accommodation; (3) that the employer did not accommodate her, and (4) that the employer did accommodate others similar in their ability or inability to work."[78]  In reviewing the summary judgment evidence submitted by Plaintiff and Defendant, there is no dispute that Plaintiff has satisfied elements one, two, and three.  Defendant does dispute that Plaintiff has established element four, but again, Defendant applies the wrong legal standard to this question.

Regarding the necessary element that "the employer did accommodate others similar in their ability or inability to work," Defendant again misses the mark.  Defendant focuses on purported comparator Ned Robertson ("Robertson"), who was the acting

---

[76] Defendant argues: "That framework requires that the plaintiff bear the initial burden of establishing a *prima facie* case of discrimination. Her burden is met by a showing that (1) she was pregnant, (2) she was qualified for her position, (3) she was subjected to an adverse employment decision, and (4) others, who were not pregnant but similarly situated as to ability or inability to work, were more favorably treated. *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998)." Rec. Doc. No. 15-1, pp. 7-8.
[77] *See* Rec. Doc. No. 15-1, pp. 8-11.
[78] *Young* at 1354.
Document Number: 57687

interim Chief of Police prior to Chief Lefeaux assuming the position. Robertson was assigned to light duty tasks following two eye surgeries that resulted in temporary physical restrictions in the performance of his job duties. However, rather than focusing on Robertson's similarity in his ability or inability to work, Defendant instead focuses its argument on Robertson's professional experience as compared to Plaintiff's professional experience and argues that Plaintiff and Robertson are thus not similarly situated. Defendant argues that Plaintiff was a "relatively novice" police officer having only achieved the rank of patrolman while Robertson had assisted in the training of Southon, who later assumed the position of Assistant Chief.[79] In contrast, Defendant points to a disciplinary action taken against Plaintiff for "substandard work and carelessness" and written warnings issued to Plaintiff regarding failures in correctly effectuating evidence drops and writing incident reports.[80] Defendant then compares the difference in Robertson's accumulation of leave time versus Plaintiff's exhaustion of all forms of leave time.

Despite Defendant's arguments, the issue under the PDA is not a comparator's difference in professional experience, disciplinary record, or available leave time. The sole basis for comparison under *Young* is the similarity in the physical restrictions of the employee and need for similar accommodations.

Plaintiff points to two alleged comparators – Officer Jeremy Thompson ("Thompson") and Robertson. Chief Lefeaux acknowledged in his deposition that some

---

[79] Rec. Doc. No. 15-1, p. 12.

[80] *Id.* (citing Exhibit 8, Employee Warning Records of Plaintiff). The Court notes that Defendant has only submitted Plaintiff's disciplinary record in arguing the fourth element of her *prima facie* case. Defendant never claims that Plaintiff's disciplinary record was a legitimate, non-discriminatory reason for her termination, and the Court does not construe it as such.

Document Number: 57687

accommodations were made for Thompson after he returned to the police department with physical restrictions based on a recent shoulder surgery.[81] Plaintiff notes that, although Chief Lefeaux testified in Defendant's Rule 30(b)(6) deposition that Defendant had no documents relating to accommodations granted to Thompson, Chief Lefeaux admitted that Thompson was permitted to perform secretarial work and answer the telephones for the police department after the secretary retired.[82]  Regarding Robertson, Chief Lefeaux testified that he was assigned light duty tasks following two eye surgeries.[83] Further, Rachel attested that it was disclosed at the aforementioned meeting between Plaintiff, her counsel, and Defendant's representatives that Robertson had been assigned light duty work before his retirement due to his age and health.[84]

Plaintiff maintains she has produced evidence that other police officers employed by Defendant were permitted to perform light duty work based on physical limitations while she was not.  Notably, Plaintiff argues that Defendant claims Robertson was not similarly situated to Plaintiff without citing to any record evidence to support this statement; yet, the record evidence demonstrates that Robertson was allowed to perform light duty work based on physical limitations.  Thus, Plaintiff contends Defendant has not carried its burden of establishing that the comparator element is not satisfied by Plaintiff's summary judgment evidence. The Court agrees.   At the very least, Plaintiff has demonstrated that, whether Defendant accommodated others similar to Plaintiff in their ability or inability to work, is a disputed question of fact.

---

[81] Rec. Doc. No. 16-2, pp. 15-15 (Deposition of Chief Jonathan Lefeaux, pp. 60-62).
[82] *Id.*
[83] *Id.* at pp. 27-28 (Deposition of Chief Jonathan Lefeaux, pp. 108-110).
[84] Rec. Doc. No. 16-11, p. 2 (Declaration of Adrienne Rachel, ¶ 10).
Document Number: 57687

Considering that Plaintiff has established a *prima facie* case of pregnancy discrimination, under *McDonnell Douglas*, Defendant must present summary judgment evidence of a legitimate, non-discriminatory reason for Plaintiff's termination. Defendant claims that Plaintiff was discharged from her position because (1) she was no longer qualified for the patrolman position based on her restrictions; (2) her POST certifications had lapsed; and (3) there was no longer a position available when Plaintiff was able to return because the position had been filled.[85] Assuming without deciding that the given reasons for Plaintiff's termination are legitimate and non-discriminatory, the Court finds that Plaintiff has presented ample evidence of pretext such that summary judgment is not proper in this case.

Plaintiff has presented evidence that Chief Lefeaux resented Plaintiff's assertion of her legal rights,[86] and Chief Lefeaux also testified that Defendant never even considered assigning Plaintiff to part-time work after she notified Defendant of her pregnancy.[87] Further, when considering reinstating Plaintiff's employment, Defendant's former counsel advised Plaintiff she could be reinstated if she dropped her pending EEOC charge.[88] When Plaintiff refused these terms, Defendant terminated her employment.[89]

Defendant has also relied on provisions of Louisiana state employment law which do not require an employer to create a new position for a pregnant employee. Chief Lefeaux's March 31, 2015 letter to Plaintiff advised that "[w]e currently have no position

---

[85] *See* Rec. Doc. No. 15-1, p. 4. This argument is undermined by Lefeaux's sworn testimony that Plaintiff would have been reinstated if she dropped her lawsuit against Defendant which suggests there was clearly a position to which Plaintiff could have been reinstated.

[86] Rec. Doc. No. 16-2, p. 34 (Deposition of Chief Jonathan Lefeaux, pp. 134; 136).

[87] *Id.* at p. 21 (Deposition of Chief Jonathan Lefeaux, p. 82).

[88] Rec. Doc. No. 16-4, p. 13 (Deposition of Plaintiff, p. 50).

[89] Rec. Doc. No. 16-2, p. 34 (Deposition of Chief Jonathan Lefeaux, p. 133).

Document Number: 57687

available that I could temporarily assign you to.  This request would require me to create a position which does not currently exist within our agency and place an undue burden on the citizens of the Town of Brusly."[90]  Further, Chief Lefeaux testified that the Town of Brusly did not have the budget to create a new position for Plaintiff.[91]

Indeed, LSA-R.S. 23:342(4) provides that:

It shall be an unlawful employment practice unless based upon a bona fide occupational qualification:

(4) For any employer to refuse to temporarily transfer a pregnant female employee to a less strenuous or hazardous position for the duration of her pregnancy if she so requests, with the advice of her physician, where such transfer can be reasonably accommodated, provided, however, that no employer shall be required by this Part to create additional employment which the employer would not otherwise have created, nor shall such employer be required to discharge any employee, transfer any employee with more seniority, or promote any employee who is not qualified to perform the job.

Defendant's reliance on this statute is misplaced and does not overcome the pretext evidence in the record.  First, the provision cited above assumes that an employer has made an attempt to reasonably accommodate a pregnant employee.  As the undisputed evidence in this matter demonstrates, all accommodation request made by Plaintiff were rebuffed, declined without explanation, or simply ignored by Defendant.  Further, in similar circumstances, courts have held that reliance on state law can still be considered pretextual under *Young* where the sole issue for the failure to accommodate is the cost to the employer.  In *Legg v. Ulster County*,[92] a pregnancy discrimination case decided by the Second Circuit, the court quoted *Young* and noted that, in presenting a

---

[90] Rec. Doc. No. 15-7.
[91] Rec. Doc. No. 16-2, p. 12 (Deposition of Chief Jonathan Lefeaux, pp. 47-48).
[92] 820 F.3d 67 (2d Cir. 2016).
Document Number: 57687

legitimate, non-discriminatory reason for an employer's action, "consistent with the Act's basic objective, that reason normally cannot consist simply of a claim that it is more expensive or less convenient to add pregnant women to the category of those ('similar in their ability or inability to work') whom the employer accommodates."[93]  In *Legg*, the employer argued that it was precluded by New York state law from providing its pregnant employee a light duty accommodation.  The *Legg* court, applying *Young*, held as follows:

> Moreover, although the defendants claim that they were motivated solely by compliance with state law, **a reasonable jury could find that cost was a factor, as the defendants lacked the same financial incentive to continue to employ pregnant employees in some capacity and had a countervailing incentive to replace them**. VanBlarcum admitted as much at trial, stating that it would be more costly to provide benefits to pregnant employees because the County would have to "find somebody else to fill [the full duty] position" and "pay them as well." Joint App'x at 521. The defendants all but concede the same on appeal, admitting that "[i]f there is an element of cost associated with the distinction, it is a result of New York State law and policy." Defs.' Opp'n Br. at 30. *Young* expressly cautioned, however, that **cost alone is generally not a legitimate basis for refusing to accommodate pregnant employees on the same basis as other employees similar in their ability or inability to work**. 135 S.Ct. at 1354. **To the extent that the defendants' policy was motivated by cost, a reasonable jury could conclude that their purported justification for denying light duty accommodations to pregnant employees— compliance with state law—is pretextual**.[94]

The same could be said in the present case, particularly considering the complete failure to even consider accommodating Plaintiff while others with physical restrictions were accommodated, and in light of the comments made to Plaintiff that were hostile to

---

[93] *Id.* at 73 (quoting *Young*, 135 S.Ct. at 1354; *see also Ariz. Governing Comm. for Tax Deferred Annuity & Deferred Comp. Plans v. Norris*, 463 U.S. 1073, 1084 n. 14, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983) (Marshall, J., concurring in the judgment) (recognizing that Congress's passage of the PDA indicates that the greater cost of providing benefits for a protected class cannot justify differential treatment based upon the protected trait)).

[94] *Id.* at 77 (emphasis added).

Document Number: 57687

her pregnancy or demonstrated a blanket refusal to accommodate her pregnancy. Accordingly, Defendant is not entitled to summary judgment on Plaintiff's PDA claim.

### C.  ADA Claim

Plaintiff argues, and the Court agrees, that Defendant has not properly moved for summary judgment on her ADA claim.   Indeed, Defendant's brief contains no ADA heading, nor does it address the *prima facie* elements for such a claim.   Defendant appears to blend PDA and ADA elements and jurisprudence in its arguments; however, Defendant never fully addresses Plaintiff's ADA claim.   Nevertheless, based on the record evidence in this case, Defendant is not entitled to summary judgment on Plaintiff's ADA claim.

Assuming *arguendo* that Plaintiff's pregnancy would qualify as a disability under the ADA, Plaintiff must also demonstrate that she was qualified for the position.  The ADA protects qualified individuals with disabilities from discrimination."[95]   The Act defines a "Qualified Individual" as:

> an individual who, **with or without reasonable accommodation**, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.[96]

"The term 'qualified,' with respect to an individual with a disability, means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position the individual holds or desires and, with or

---

[95] *Picard v. St Tammany Parish Hospital*, 423 Fed. Appx. 467, 469 (5th Cir. 2011).
[96] 42 U.S.C. § 12111(8)(emphasis added).
Document Number: 57687

without reasonable accommodation, can perform the essential functions of the position."[97] As set forth above, there is no summary judgment evidence that Defendant evaluated Plaintiff's qualification for the position with reasonable accommodations.

Additionally, discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability [...] unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]."[98]  To sustain a failure to accommodate claim, a plaintiff must show that: "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations."[99]  Further, **when a qualified individual with a disability requests a reasonable accommodation, the employer and employee should engage in "flexible, interactive discussions to determine the appropriate accommodation**."[100]  EEOC regulations provide that an employer should initiate the interactive process, but the interactive process requires the input of the employee as well as the employer.[101]

That the Defendant failed to engage in this required interactive process is actually acknowledged by Chief Lefeaux's sworn testimony that no attempts were made to provide Plaintiff with reasonable accommodations during her pregnancy, and, in fact, Defendant

---

[97] 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m); *Shirley v. Precision Castparts Corp.,* 726 F.3d 675, 678 (5th Cir.2013); *Kennedy v. Parkview Baptist School Inc.,* 2014 WL 7366256 at *6 (M.D. La. Dec. 24, 2014).
[98] 42 U.S.C. § 12112(b)(5)(A).
[99] *Feist v. Louisiana Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013)(internal quotation marks omitted).
[100] *Griffin*, 661 F.3d at 224 (emphasis added).
[101] *Loulsgeld v. Akzo Nobel Inc.*, 178 F.3d 731, 735 (5th Cir. 1999) (citing 29 C.F.R. § 1630.2(o)(3)).
Document Number: 57687

did not even consider any accommodations.  Rather, it simply determined that, while pregnant, and based solely on being pregnant, Plaintiff was not qualified for her position with the police department.  To the extent that Defendant could or has presented legitimate, non-discriminatory reasons for Plaintiff's termination, the same reasoning and analysis discussed above regarding the pretext evidence in this case likewise precludes summary judgment in favor of the Defendant on Plaintiff's ADA claim.

## III.  CONCLUSION

For the reasons set forth above, the *Motion for Summary Judgment*[102] by Defendant, Town of Brusly DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 8th day of November, 2019.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[102] Rec. Doc. No. 15.
Document Number: 57687